# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**TIMBER RIDGE, INC.,**

      **Plaintiff,**

v.                                                          Civil Action No. 3:05-CV-16
                                                           (Judge Bailey)

**HUNT COUNTRY ASPHALT &**
**PAVING, LLC, and JEFFREY**
**D. GREENBURG,**

      **Defendants.**

## ORDER CERTIFYING ISSUES TO
## WEST VIRGINIA SUPREME COURT OF APPEALS

Currently pending before this Court is the Motion for Summary Judgment filed by plaintiff Timber Ridge, Inc. ("Timber Ridge") (Doc. 74). The motion, having been fully briefed, is now ripe for decision.

In its motion, the plaintiff seeks summary judgment on the counterclaim filed by the defendant, claiming the same to be barred by the West Virginia Contractor Licensing Act.

### Facts

The plaintiff operates a camp for youths and adults in Hampshire County, West Virginia. Timber Ridge entered into a contract with the Hunt Country Asphalt & Paving, LLC ("Hunt Country") to provide materials and labor for certain improvements at the Hampshire County facility, with a total contract price of $109,610. At the time the contract was executed, the defendants did not possess a West Virginia contractor's license. Further, the defendants have never obtained a contractor's license in West Virginia.

Timber Ridge filed this action against Hunt Country and Jeffrey D. Greenberg[1] on January 26, 2005, in the Circuit Court of Hampshire County, West Virginia, alleging breach of contract, breach of warranty, and negligence. The action was removed by the defendants to this Court on March 7, 2005 (Doc. 1). In their answer, the defendants asserted a counterclaim against the plaintiff for breach of contract, seeking $80,000 in damages (Doc. 3). Subsequently, the plaintiff filed an Amended Complaint (Doc. 55), and the defendants filed an answer and counterclaim thereto (Doc. 58).

**Issue 1**

The first issue presented by the Motion for Summary Judgment is whether the West Virginia Contractor Licensing Act, West Virginia Code § 21-11-1, *et seq.*, prevents an unlicensed contractor from utilizing the courts to advance a claim or counterclaim against the landowner. The Act provides that "no person shall engage in this state in any act as a contractor, as defined in this article, unless such person holds a license issued under the provisions of this article. No firm, partnership, corporation, association or other entity shall engage in contracting in this state unless an officer thereof holds a license issued pursuant to this article." W.Va. Code § 21-11-6(a).[2]

The only statutory consequences for a violation of the Act are administrative and criminal. Timber Ridge contends, however, that the Act should be construed so as to prevent an unlicensed contractor from advancing a claim on the contract or for the work

---

[1] It appears that Mr. Greenberg was included due to an allegation that the LLC had not been formed at the time that the contract was executed.

[2] As in effect at the times relevant to this action. This section was amended by Acts 2007, c. 146, effective March 7, 2007.

2

performed.

This Court's research, as well as that of the parties, does not disclose any decision of the West Virginia Supreme Court of Appeals which addresses the issue. Inasmuch as the answer to the issue "may be determinative of an issue in a pending cause in the certifying court" and "there is no controlling appellate decision," the West Virginia Supreme Court of Appeals has jurisdiction to answer a certified question from this Court. W.Va. Code § 51-1A-3.

As is required in certifications from inferior State courts, this Court will state its opinion as to the resolution of the issue. Many states have contractor licensing statutes. A number of those states have statutes which, by their own terms, prohibit an unlicensed contractor from asserting a claim against the other party.[3]

Other states have statutes, such as West Virginia's, which provide no guidance as to whether an unlicensed contractor may maintain an action to recover on the construction contract.

In ***Cooper v. Johnston,*** 283 Ala. 565, 219 So.2d 392 (1969), the Alabama Supreme Court held that an unlicensed contractor that performed work in violation of the Alabama contractor licensing statute could not bring an action to enforce or recover on a construction contract, even though the Alabama statute did not contain an express provision barring

---

[3] These states appear to include Alaska (A.S. § 08.18.151), Arizona (A.R.S. § 32-1153), Arkansas (Ark. Stat. Ann. § 71-713), California (Cal. Bus. & Prof. Code § 7031), Florida (Fla.S. § 489.128), Hawaii (H.R.S. § 444-22), Idaho (Idaho Code § 54-5217), Michigan (MCL 339.2412(1)), Mississippi (A.M.C. § 73-59-9), Nevada (N.R.S. § 624.320), New Mexico (N.M.S.A. § 60-13-30), Oregon (O.R.S. § 701.065), South Carolina (Code S.C. § 40-11-370), Tennesee (T.C.A. § 62-6-103) (permits recovery of expenses but not profit); Utah (Utah Code Ann. § 58-55-604), Virginia (Va. Code § 54-142(D)), and Washington (RCWA § 18.27.080).

3

such actions. The court determined that the contractor licensing law was enacted for the protection of the public and to better assure properly constructed structures which are free from defects and dangers to the public.

Similarly, in *White v. Miller*, 718 So.2d 88, 89 (Ala.Civ.App. 1998), the court stated:

> It is undisputed that the contractor in this case was unlicensed, that the work was the type covered by the statute, and that the cost of the work exceeded $20,000. As such, the contractor cannot recover under a contract or a quasi-contract, or in an action to establish a mechanic's lien. *J & M Industries, Inc. v. Huguley Oil Co.*, 546 So.2d 367 (Ala. 1989).

In *White, supra*, as in this case, the suit was filed by the property owner and the unlicensed contractor asserted a counterclaim.

In *Jackson v. Holder*, 495 A.2d 746 (D.C. 1985), the District of Columbia Court of Appeals held that an unlicensed plumber could not recover against a home owner, noting that "a contract made in violation of a licensing statute that is designed to protect the public will usually be considered void and unenforceable. . .." 495 A.2d at 748 (citing *Highpoint Townhouses, Inc. v. Rapp*, 423 A.2d 932, 935 (1980) (*intern* quote *Truitt v. Miller*, 407 A.2d 1073, 1079 (1979)..

Illinois is also in accord. In *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 234 Ill.App.3d 1017, 601 N.E.2d 803 (Ill.App. 1992), the Illinois court noted that a contract made by an unlicensed plumber was invalid. The court stated:

> In furtherance of the legislative goals of providing standards and protecting the public health, the [Plumber's Licensing] Act provides that one who

4

attempts to practice plumbing without a license may suffer substantial penalties, including criminal prosecution and fines. By judicial construction, the unlicensed plumber also forfeits his right to compensation for (illegal) services rendered. In *Wright v. Baird* (1928), 249 Ill.App. 90, the court held that an unlicensed plumber could not recover a fee for his fully performed services because the contract violated the Plumbers Licensing Act. In reaching this conclusion, the court rejected the argument that such a result could not occur unless the licensing statute expressly declared such contracts illegal.

. . .

In another licensing case, the court noted, "In Illinois, generally, a statute which declares an act illegal and which imposes a penalty for its violation renders a contract for the performance of such an act void and unenforceable." (*T.E.C. & Associates, Inc. v. Alberto-Culver Co.* (1985), 131 Ill.App.3d 1085, 1095, 476 N.E.2d 1212 (Non-licensed employment agency could not recover payment for services where licensing statute made violation of statute a criminal offense).) The court in *T.E.C.,* like that in *Wright v. Baird,* held that the licensing statute need not expressly declare a contract made in violation of its provisions to be illegal in order for the court to find it illegal. See also *Keenan v. Tuma* (1926), 240 Ill.App. 448, 456 (Employment contract for services of unlicensed architect provided for illegal consideration and was therefore a nullity); *E & B Marketing Enterprises,*

5

>     *Inc. v. Ryan* (1991), 209 Ill.App.3d 626, 154 Ill.Dec. 339, 341-42, 568 N.E.2d 339, 341-42 ("[S]tatute need not expressly declare a particular contract void to render it illegal under the regulatory scheme of the statute") (voiding a contract that provided for physician fee-splitting); *Leoris v. Dicks* (1986), 150 Ill.App.3d 350, 353, 103 Ill.Dec. 584, 501 N.E.2d 901, *appeal denied* (1987), 115 Ill.2d 542, 110 Ill.Dec. 457, 511 N.E.2d 429 (contract made in contravention of public policy against certain types of attorney fee-splitting would be deemed void and unenforceable); *Tovar v. Paxton Community Memorial Hospital* (1975), 29 Ill.App.3d 218, 330 N.E.2d 247 (contract between unlicensed physician and hospital for performance of physician services held to be illegal and void); *Nutri-Pro, Inc. v. Phelps* (1988), 172 Ill.App.3d 505, 122 Ill.Dec. 498, 526 N.E.2d 891 (Illinois law holds that contracts in direct contravention of statutory purpose are not enforceable even though the statute itself inflicts a penalty and does not expressly declare related contracts void); see also *Federal Land Bank of St. Louis v. Walker* (1991), 212 Ill.App.3d 420, 156 Ill.Dec. 655, 571 N.E.2d 242, *appeal denied* (1991), 141 Ill.2d 539, 162 Ill.Dec. 486, 580 N.E.2d 112.

234 Ill. App. at 1021-1023, 601 N.E.2d at 806-07.

Maryland, too, prevents a recovery for unlicensed contractors. In *Berenter v. Berman*, 258 Md. 290, 265 A.2d 759 (1970), the Court of Appeals of Maryland held that an unlicensed contractor could not enforce a mechanic's lien. In its discussion, the court stated:

> We, and our predecessors, have held that if a statute requiring a license for conducting a trade, business or profession is regulatory in nature for the protection of the public, rather than merely to raise revenue, an unlicensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy. In *Snodgrass v. Immler*, 232 Md. 416, 194 A.2d 103 (1963) - which we consider to be controlling in the present case - the plaintiff, an architect, sought to recover architectural fees for services rendered by him, even though he was not licensed as an architect as required by Code (1957), Art. 43, §§ 515 and 516. Like the Home Improvement Law involved in the instant case, the Code provisions requiring architects to be licensed provided for criminal sanctions, but was silent in regard to civil consequences following from the failure to obtain a license.

258 Md. at 292, 265 A.2d at 761.

In *Richards Conditioning Corp. v. Oleet*, 21 N.Y.2d 895, 236 N.E.2d 639, 289 N.Y.S.2d 411 (1968), the New York Court of Appeals held that an unlicensed contractor could not recover on a construction agreement, since the purpose of the licensing scheme is to protect the public health and safety. *See also* *Ermont Associates, Inc. v. Battenfield*, 210 A.D. 293, 620 N.Y.S.2d 7 (1994); *Millington v. Rapoport*, 98 A.D.2d 765, 469 N.Y.S.2d 787 (1983).

In *Bryan Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E.2d 507 (1968), the Supreme Court of North Carolina also held that an unlicensed contractor could not maintain

7

an action on the contract. The court stated:

> The purpose of Article 1 of Chapter 87 of the General Statutes, which prohibits any contractor who has not passed an examination and secured a license as therein provided from undertaking to construct a building costing $20,000.00 or more, is to protect the public from incompetent builders. When, in disregard of such a protective statute, an unlicensed person contracts with an owner to erect a building costing more than the minimum sum specified in the statute, he may not recover for the owner's breach of that contract. This is true even though the statute does not expressly forbid such suits. 53 C.J.S. *Licenses* § 59 (1948); 33 Am.Jur. *Licenses* §§ 68-72 (1941); *Annot.*, Failure of artisan or construction contractor to procure occupational or business license or permit as affecting validity or enforcement of contract. 82 A.L.R.2d 1429 (1962); 5 Williston *Contracts* (Revised Edition 1937) § 1630; 6 Williston *Contracts*, Ibid. § 1766; 6A Corbin on Contracts §§ 1510-1513.
>
> In denying an unlicensed contractor the right to recover upon his contract, the court sometimes terms such contracts "void," but this term is too broad to be used in this connection. "A void contract is no contract at all; it binds no one and is a mere nullity." 17 Am.Jur.2d *Contracts* § 7 (1964). Contracts such as the one between owners and Bryan are not totally without legal effect, for the innocent party may maintain an action for damages for breach of a contract entered into between him and an unlicensed contractor.

8

33 Am.Jur. *Licenses* § 68 (1968 Cum.Supp. p. 80). See cases collected in *Annot.*, 82 A.L.R.2d 1429, § 3(b) and § 6(b).

274 N.C. at 270, 162 S.E.2d at 510-11. *Accord* ***Carrico v. Village of Sugar Mountain***, 114 F.Supp.2d 422, 426 (W.D.N.C. 2000).

In an analogous case, the Supreme Court of Colorado held that an unlicensed real estate agent could not recover compensation for his services. ***Benham v. Heyde***, 122 Colo. 233, 221 P.2d 1078 (1950). The Colorado court quoted as follows:

> "Where a statute requires a broker to obtain a license before sales of the kind in question can be negotiated by him, there is no doubt that if such a sale is made by one acting as a broker without the required license, he can recover no compensation for his services." 6 ***Williston on Contracts***, Rev. ed., § 1765. "A contract, entered into by a person in the course of an occupation or business in which he is engaged without taking out a license * * * as required by law, is void and unenforceable where the statute or ordinance expressly vitiates such contracts, or where it expressly prohibits the carrying on of such occupation or business without a license, * * * even though it does not expressly declare such contracts to be void." 53 C.J.S., *Licenses*, § 59, page 711.

122 Colo. at 239-240, 221 P.2d at 1081.

In ***Design Development, Inc. v. Brignole***, 20 Conn.App. 685, 570 A.2d 221 (1990), the Appellate Court of Connecticut held that an unlicensed architect could not maintain an action to recover on his contract, even though the statutory remedy was criminal. The court

9

further held that "when the illegality, either in whole or in part, is in the thing which the party seeking to recover was to do, then there can be no recovery upon a quantum meruit." 20 Conn.App. at 688, 570 A.2d at 223 (citing **McKnight v. Gizze**, 119 Conn. 251, 256, 175 A. 676 (1934) and **Douglas v. Smulski**, 20 Conn.Sup. 236, 131 A.2d 225 (1957)).

The above authorities lead this Court to the conclusion that, under the West Virginia statute, an unlicensed contractor should not be permitted to maintain a claim or counterclaim under a forbidden contract. A contrary position would vitiate the protective aspects of the statute. This Court notes that some jurisdictions do permit a set-off against a claim by the other party. *See* **Sumner Development Corp. v. Shivers**, 517 P.2d 757 (Alaska 1974).

**Issue 2**

The second issue arises due to the assertion of the defendants that Timber Ridge was fully aware of Hunt Country's unlicensed status. The defendants contend that, in such case, the defendants should be able to maintain an action notwithstanding the West Virginia Contractor Licensing Act. This Court does not agree, but is of the opinion that this issue should also be certified to the West Virginia Supreme Court of Appeals.

The cases appear to be relatively uniform that an unlicensed contractor may not maintain a claim or counterclaim against a landowner, even if the landowner was fully aware of the contractor's unlicensed status.

In **Mascarenas v. Jaramillo**, 111 N.M. 410, 414, 806 P.2d 59, 63 (1991), the Supreme Court of New Mexico rejected the contractor's argument that the landowner knew of the unlicensed status, stating:

10

As a matter of public policy, an unlicensed contractor may not retain payments made pursuant to a contract which requires him to perform in violation of the Construction Industries Licensing Act. This is true even if, as here, the consumer has knowledge that the contractor is unlicensed. The public policy behind the licensing requirement of the Act is so strong that the element of consumer knowledge is of no consequence in our decision.

Similarly, the Supreme Court of California, sitting in bank, held:
Regardless of the equities, section 7031 bars all actions, however they are characterized, which effectively seek "compensation" for illegal unlicensed contract work. Thus, an unlicensed contractor cannot recover either for the agreed contract price or for the reasonable value of labor and materials. The statutory prohibition operates even where the person for whom the work was performed knew the contractor was unlicensed.

**Hydrotech Systems, Ltd. v. Oasis Waterpark**, 52 Cal.3d 988, 997, 803 P.2d 376 (1991) (citations omitted).

The Court of Appeals, in **Wagner v. Graham**, 296 S.C. 1, 3, 370 S.E.2d 95, 96 (1988), rejected the argument that the claim was not barred because the homeowner knew that the contractor was unlicensed, stating that "[i]f one might avoid the impact of the statute by applying the law of estoppel, one could, by a similar reasoning, avoid the act by agreement between the Contractor and Homeowner. Clearly this would not be allowed."

New York is in accord. In **Millington v. Rapoport**, 98 A.D. 765, 469 N.Y.S.2d 787

11

(1983), the court stated:

> The fact that the homeowner was aware of the absence of a license or even that the homeowner planned to take advantage of its absence creates no exception to the statutory requirement. If the legislative mandate can be evaded by the simple expedient of informing the homeowner of the lack of a license prior to entering upon the work, the firm public policy of expelling the unlicensed from the home improvement field would be frustrated. Just as a party may not waive a statute enacted for his benefit if such waiver contravenes public policy, estoppel may not be relied upon to reward a practice which violates public policy as prescribed by the Administrative Code.

98 A.D. at 766, 469 N.Y.S.2d at 788 (citations omitted).

Also in accord are **Butler v. Obayashi**, 71 Haw. 175, 785 P.2d 1324 (1990); **Jackson v. Holder**, 495 A.2d 746 (D.C. 1985); **Sumner Development Corp. v. Shivers**, 517 P.2d 757 (Alaska 1974). *See **Design Devlopment, Inc. v. Brignole***, 20 Conn.App. 685, 570 A.2d 221 (Conn.App. 1990).

In **Bruner & O'Connor on Construction Law**, § 16.18, the authors state:

> As a general rule, an unlicensed contractor or design professional is not permitted to recover for services rendered. As discussed below, this is generally the result, even though:
>
> (1) The applicable statute does not expressly prohibit recovery;
>
> (2) The person to whom services were provided knows of the unlicensed

status of the person performing the services;

(3) The person seeking recovery is licensed at the time of suit; or

(4) Recovery is sought under a theory unrelated to breach of contract, e.g., quantum meruit.

Based upon the foregoing authorities, this Court is of the opinion that knowledge by the landowner does not affect the rule prohibiting an unlicensed contractor from advancing a claim or counterclaim in court.

## W.Va. Code § 51-1A-6

West Virginia Code § 51-1A-6 requires the certifying court to provide certain information to the West Virginia Supreme Court of Appeals. The required information is as follows:

1. The question of law to be answered:

    A. Whether a contractor who does not have a West Virginia contractor's license may utilize the courts to maintain a claim or counterclaim against the property owner.

    This Court's answer: No.

    B. Whether a landowner's knowledge of the contractor's unlicensed status estops the landowner from raising the contractor's unlicensed status.

    This Court's answer: No.

2. The facts relevant to the question, showing fully the nature of the controversy out of which the question arose:

    The requisite facts are set forth earlier in this Order.

3. A statement acknowledging that the receiving court may reformulate the

question:

This Court acknowledges that the West Virginia Supreme Court of Appeals may reformulate the question.

4. The names and addresses of counsel of record and unrepresented parties:

   A. Counsel for the plaintiff, Timber Ridge, Inc., are:

   Curtis G. Power, III, Esquire
   Amanda McDonald Wisely, Esquire
   Bowles, Rice, McDavid, Graff & Love - Winchester
   480 W. Jubal Early Drive
   Suite 130
   Winchester, VA   22601

   B. Counsel for defendants, Hunt Country Asphalt & Paving, LLC, and Jeffrey D. Greenberg is:
   J. Michael Cassell, Esquire
   Campbell Miller Zimmerman
   P.O. Box 782
   Charles Town, WV   25414

**Conclusion**

For the reasons stated above, it is hereby **ORDERED** that the questions stated above are **CERTIFIED** to the West Virginia Supreme Court of Appeals. It is further **ORDERED** that this action is **STAYED** pending final action of the West Virginia Supreme Court of Appeals.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein, and to the West Virginia Supreme Court of Appeals.

**DATED**: January 14, 2008.

JOHN PRESTON BAILEY
UNITED STATED DISTRICT JUDGE